UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

EDWARD E. MARTINEZ,

       Plaintiffs,

v.

CNH AMERICA, LLC,

       Defendant.

3:08-cv-0477-LRH-RAM

ORDER

Before the court is defendant CNH America, LLC's ("CNH") motion for summary judgment filed on February 9, 2010. Doc. #52.[1] Plaintiff Edward E. Martinez ("Martinez") filed an opposition (Doc. #55) to which CNH replied (Doc. #60).

## I.    Facts and Background

Martinez is an equipment operator employed by non-party Highfield Construction. On August 1, 2006, Martinez was operating a Case 1102D compactor/roller ("compactor") designed and manufactured by CNH in 1984. While Martinez was operating the compactor, a malfunction occurred causing the hydrostatic drive system[2] to fail and the roller to accelerate. Martinez was

---

[1] Refers to the court's docket entry number.

[2] The compactor is operated by a hydrostatic drive propulsion system. The drive system contains a diesel engine that drives an oil pump. Moving the lever forward causes the pump to deliver oil propelling the compactor forward while moving the level backwards causes the oil flow and the compactor to reverse. Centering the lever prevents the oil from moving in either direction and brings the compactor to a stop.

unable to stop the roller which veered off the road.

On July 30, 2008, Martinez filed a complaint for strict products liability. Doc. #1, Exhibit A. Subsequently, on January 20, 2009, Martinez filed an amended complaint alleging two causes of action: (1) strict products liability for a design defect; and (2) negligence per se. Doc. #26. Specifically, Martinez alleges that the compactor had a design defect because (1) the seatbelts could be hidden under the seat, (2) there was a failure to warn an operator of the dangers of operating the compactor without seat belts, and (3) there was not a secondary or emergency braking system in the event the service braking system failed. *Id.*

Thereafter, CNH filed the present motion for summary judgment as to all claims. Doc. #52.

## II. Legal Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to

2

facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III.   Discussion**

To establish a claim for a strict products liability, a plaintiff must establish: (1) that the product was defective, rendering it unreasonably dangerous; (2) the defect existed at the time the product left the manufacturer; and (3) the defect caused the plaintiff's injury. *Fyssakis v. Knight Equipment Co.*, 657 P.2d 95, 96 (Nev. 1983). A product is ultimately defective when it fails to perform "in the manner reasonably to be expected in light of its nature and intended function." *Id*.

CNH argues that it is entitled to summary judgment that the compactor was not defective because (1) it was designed with seatbelts that could not be hidden by the original bench seat, (2) there were warnings in the operator's manual and on the compactor itself warning of the dangers of operating the compactor without a seatbelt, and (3) it was designed with a parking brake which can operate as an emergency or secondary braking system. *See* Doc. #52. Further, CNH argues that it is entitled to judgment as a matter of law on Martinez's claim for negligence per se because Occupation Safety and Health Administration ("OSHA") regulations cannot sustain a claim for negligence per se in a products liability action. *Id*.

**A. Design Defect - Seatbelts**

In his amended complaint, Martinez alleges that the compactor was defective because the

3

1  "seatbelts were designed in such a way that they could be hidden under the seat." Doc. #26. CNH
2  argues that the seatbelts were designed so that they were visible at all times, even when they were
3  under the seat. Doc. #52.

4  The undisputed evidence in this matter establishes that the compactor was designed with
5  seatbelts and a bench seat which had a space between the bottom of the seat back and the seat
6  bench so that the seat belts would always be visible on the compactor even if they fell behind the
7  bench seat. *See* Doc. #52, Exhibit 4. Further, the seatbelts themselves were bolted to the frame in
8  such a way as to make them visible while climbing in to the compactor. Doc. #52, Exhibit 14,
9  Chamblin Depo., p.42:12-13. Thus, there are no disputed issues of material fact that the seatbelts
10 were designed so that they could not be hidden under the seat.

11 Additionally, Martinez did not file an opposition to CNH's motion as it relates to the
12 compactor's seatbelts. Pursuant to LR 7-2(d), "the failure of an opposing party to file points and
13 authorities in response to any motion shall constitute a consent to the granting of the motion."
14 Accordingly, the court shall grant CNH's motion for summary judgment as to Martinez's claim for
15 strict products liability as it relates to defectively designed seatbelts.

16 **B. Design Defect - Failure to Warn**

17 Martinez also alleges a design defect upon an alleged failure to "have a warning alerting the
18 operator of the dangers of not using the seatbelt." Doc. #26. In response, CNH argues that it is
19 entitled to summary judgment because the operator's manual directs an operator to wear a seatbelt
20 at all times and there are warning decals on the compactor directing the operator to first read the
21 operator's manual prior to starting the compactor. *See* Doc. #52.

22 The undisputed evidence establishes that the compactor displayed warning decals
23 prominently on the compactor console which directed the operator to read the operator's manual
24 before operating the machine. *See* Doc. #52, Exhibit 4, Exhibit 4B. Further, the operator's manual
25 warned the operator of the dangers of not wearing a seatbelt and directed the operator to wear one.

26

4

1  Doc. #52, Exhibit 4B, p.5 ("Warning - Always fasten the seat belt before you start the engine.").
2  Thus, there are no disputed issues of material fact that there were prominent warning decals on the
3  compactor.
4        Additionally, Martinez did not file an opposition to CNH's motion as it relates to his failure
5  to warn claim. Pursuant to LR 7-2(d), "the failure of an opposing party to file points and authorities
6  in response to any motion shall constitute a consent to the granting of the motion." Accordingly,
7  the court shall grant CNH's motion for summary judgment as to Martinez's claim for strict
8  products liability as it relates to a failure to warn.

9        **C. Design Defect - Emergency/Secondary Brake**

10        Martinez finally alleges that the compactor was defective because it was designed without a
11  secondary or emergency braking system. Specifically, Martinez alleges that the compactor had a
12  service braking system (the hydrostatic drive) and a parking brake, but that there was no secondary
13  or emergency braking system designed and manufactured into the compactor.
14        In opposition, CNH contends that the compactor was designed with an emergency or
15  secondary braking system in the event the hydrostatic drive system failed. Specifically, CNH
16  argues that the parking brake operated as an emergency or secondary braking system because
17  pulling up on the handle activated the attached brake shoe to press against the brake drum slowing
18  the compactor. *See* Doc. #52, Exhibit 4. Further, CNH's expert, Steve Burdette ("Burdette"),
19  performed an engineering analysis on the parking brake and based on his examination, Burdette
20  opined that the parking brake is a secondary braking system. Doc. #56, Exhibit H, p.16 l:17-21.
21        However, taking the evidence in the light most favorable to Martinez, the court finds that
22  there is a disputed issue of material fact as to whether the parking brake had sufficient capacity to
23  operate as a secondary or emergency braking system precluding summary judgment. Initially, the
24  court finds that the operator's manual indicates that the only use for the parking brake was when
25  the compactor was in a stationary position and was not moving. The purpose of the operations
26

5

1  manual is to advise the operator about the functions and operations of the compactor and nowhere
2  in the operations manual does it state that the parking brake could be used to stop a moving
3  compactor.

4  Additionally, Martinez's expert, James E. Thompson ("Thompson"), testified that the
5  parking brake could not stop an accelerating compactor. *See* Doc. #37, Exhibit J, Thompson Depo.,
6  p.75 l:10-15 ("Ok. Its adequate for a parking brake . . . where it's applied on the stationary vehicle.
7  It may be adequate to stop this machine when it's operating at a walking pace, normal speed when
8  your kinetic energy is much less because of a lower velocity."). Further, Thompson opined that
9  when the compactor was designed, the parking brake was intended only to be used when the
10 compactor was in a stationary position. *Id*. p.73-75. Therefore, the court finds that Martinez has
11 raised a disputed material issue of fact as to whether the compactor was designed without a
12 secondary or emergency braking system. As such, CNH is not entitled to summary judgment. *See*
13 FED. R. CIV. P. 56; *See v. Durang*, 711 F.2d at 143 (where reasonable minds could differ on the
14 material facts at issue, summary judgment is not appropriate).

15 **D. Negligence Per Se**

16 In the amended complaint, Martinez alleges that pursuant to 29 CFR §1926.601, all
17 vehicles are required to have a service brake system, an emergency braking system, and a parking
18 brake system. 29 CFR §1926.601(b)(1). Martinez alleges that CNH's failure to design the
19 compactor with an emergency braking system constitutes negligence per se.

20 However, a violation of OSHA regulations cannot establish negligence per se in a product
21 liability action. *Robertson v. Burlington Northern Railroad Company*, 32 F.3d 408, 410-411 (9th
22 Cir. 1994); *see also Minichello v. U.S. Indus., Inc.*, 756 F.2d 26, 29 (6th Cir. 1985) ("We do not
23 mean to suggest that OSHA regulations can never be relevant in a product liability case, but OSHA
24 regulations can never provide a basis for liability because Congress has specified that they should
25 not."); *Albrecht v. Baltimore & Ohio Railroad Co.*, 808 F.2d 329, 332 (9th Cir. 1987) ("In a

26

negligence action, regulations promulgated under . . . [OSHA] provide evidence of the standard of care . . . but they neither create an implied cause of action nor establish negligence per se."). Accordingly, CNH is entitled to summary judgment on Martinez's claim for negligence per se.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Doc. #52) is GRANTED in-part and DENIED in-part in accordance with this order.

IT IS SO ORDERED.

DATED this 16th day of August, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE